Morris **RIGGLE**, Plaintiff,

v.

**CSX TRANSPORTATION, INC.**, Defendant.

Civ. No. S 90–720.

United States District Court, D. Maryland.

Jan. 30, 1991.

---

Joseph C. Nelson, III, Nelson & Hill, P.A., Athens, Ga., J. Carroll Holzer, Holzer, Maher & Demilio, Towson, Md., for plaintiff.

Stanley Mazaroff, Todd J. Horn, Venable, Baetjer & Howard, Baltimore, Md., for defendant.

## MEMORANDUM

SMALKIN, District Judge.

This is an action filed by plaintiff, Morris Riggle, against his former employer, CSX Transportation, Inc. ("CSX"), alleging violation of the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* This matter is currently before the Court on CSX's motion for summary judgment. Plaintiff has filed a response and CSX has filed a reply to that response. No oral hearing is needed. Local Rule 105 subd. 6, D. Md.

## BACKGROUND

### FACTS

Plaintiff was employed by CSX, or its predecessor, for 21 years. Prior to his discharge in 1989, plaintiff had been a manager in the Agricultural Products Unit ("Unit") of the Marketing Department of CSX Distribution Services for six years.

In 1986, when plaintiff was 37 years old, serious conflicts developed between plaintiff and senior CSX managers. During that year, the Vice President for Marketing criticized plaintiff for poor performance and began taking away some of his responsibilities. In 1988, the Assistant Vice President in charge of the Unit transferred plaintiff to a new management position with no supervisory responsibilities. In early 1989, the situation deteriorated; plaintiff was denied a Management Incentive Compensation Plan Bonus, suspended with pay for one week, demoted, and put on 60 days probation. As a result, in March 1989, plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). At the time, plaintiff was 40 years old.

During late April and May 1989, the conflicts between plaintiff and his supervisors apparently diminished, and in early June the plaintiff received a deferred wage increase. Nevertheless, the conflicts subsequently redeveloped, and on July 19, 1989, the plaintiff was removed from his management position and advised that he could return to his position in the union. Plaintiff elected not to return to his union position, and he was discharged from CSX.

On July 21, 1989, plaintiff filed another charge of discrimination with the EEOC. This time, plaintiff claimed that his discharge was in retaliation for the filing of the first EEOC complaint. Apparently, the EEOC did not issue any finding about the existence of either age discrimination or a retaliatory discharge.

## PLAINTIFF'S ADEA CLAIM

Plaintiff filed the claim that is currently before this Court on March 6, 1990, alleging violation of 29 U.S.C. § 633a. Section 633a addresses "Nondiscrimination on account of age in Federal Government employment." Because this section obviously does not apply to the set of facts alleged, the Court will presume that plaintiff meant to allege violation of 29 U.S.C. § 623(a), "Prohibition of age discrimination—Employer Practices." Section 623(a) makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privi-

leges of employment, because of such individual's age."

Plaintiff claims that he was discharged from his position at CSX as a result of CSX's discriminatory selection procedures. Specifically, plaintiff alleges that in May 1988 he was reassigned to another position to make room for an employee who was less than 40 years old. Plaintiff also claims that his demotion in 1989 was the result of age discrimination. Finally, plaintiff claims that he was discharged in retaliation for filing a charge of discrimination with the EEOC.

Defendant, in its motion for summary judgment, contends that the record in this case, including many admissions made by the plaintiff, overwhelmingly demonstrates that plaintiff was discharged from his position at CSX for legitimate business reasons and not because of any discriminatory purpose. Defendant also argues that plaintiff has failed to exhaust State administrative procedures as required by the ADEA.

Rather than providing any support to his position that discrimination had occurred and that a factual dispute exists, plaintiff's response requests only that the case be dismissed without prejudice because, as defendant pointed out, plaintiff failed to first file his claim with the appropriate State authorities. Defendant, in its reply, maintains that summary judgment should be granted, or if plaintiff's request to dismiss is accepted, that the case should be dismissed with prejudice.

## DISCUSSION

### STATE FILING REQUIREMENTS UNDER ADEA

■ The first issue to be decided is whether plaintiff can pursue his ADEA claim in this Court even though he never filed an age discrimination charge with the Maryland Commission on Human Relations ("MCHR").

Section 14(b) of the ADEA, 29 U.S.C. § 633(b) states:

In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employ-

ment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated....

Maryland has a law prohibiting age discrimination and has created the MCHR to administer employees' complaints. The following provisions have been established for filing an age discrimination claim:

Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission (hereinafter referred to as the "Commission") a complaint in writing under oath. The complaint shall state the name and address of the person, firm, association, partnership, corporation, State agency, department or board alleged to have committed the act of discrimination together with the particulars thereof; and the complaint also shall contain such other information as may be required from time to time by the Commission. A complaint must be filed within six months from the date of the occurrence alleged to be a violation of the article. A complaint filed with the federal or with a local human relations commission within six months from the date of occurrence shall be deemed to have complied with the provisions of this section.

Md.Ann.Code art. 49B, § 9(a).

Plaintiff admits that he did not file any charges with the MCHR. However, on March 29 and July 21, 1989, plaintiff did file two timely charges of age discrimination with the EEOC. Defendant claims, and plaintiff in its response concedes, that although the last sentence of section 9(a) may appear to relieve a person from filing with the MCHR when that person has filed with the EEOC, courts have furnished a contrary interpretation.

In support of their position, both parties cite to *Scheller v. Hydrotherm, Inc.*, 728

F.Supp. 377 (D.Md.1989). In that case, Senior Judge Kaufman concluded that an ADEA claimant who does not file with the MCHR is barred from filing a federal suit. Judge Kaufman reasoned that to hold otherwise would " 'fly in the face of one of the principal purposes of the requirement for an initial commencement of state proceedings to encourage expeditious state processing of such claims and thereby avoid the necessity of resort to federal relief.' " *Id.* at 380 (quoting *Cornett v. AVCO Financial Services*, 792 F.2d 447, 450 (4th Cir.1986)). *See also Vessey v. Vitro Corp.*, No. H–90–668, 1990 WL 265977 (D.Md. June 8, 1990) (Chief Judge Harvey) (holding that filing with the EEOC did not relieve plaintiff of ADEA's requirement that he resort to the MCHR prior to filing a federal lawsuit).

Both defendant and plaintiff argue that because plaintiff did not first file with the MCHR, *Scheller* mandates dismissal of this federal suit. Their disagreement lies in whether the dismissal should be with, or without, prejudice.

This issue cannot be answered without examining the alternative interpretation the last sentence in section 9(a) should be given, and the effect of that interpretation on plaintiff's ADEA action. The last sentence in section 9(a) could be interpreted to mean that a timely filing with the EEOC satisfies the Maryland filing deadline only if a complaint is also filed with the MCHR. *See Scheller*, 728 F.Supp. at 379. In other words, filing with the EEOC only tolls the Maryland statute of limitations, and a claimant must thereafter file with the MCHR.

This interpretation highlights a major distinction between this case and *Scheller.* In *Scheller*, the claimant filed his ADEA action more than two years after the alleged discrimination had occurred. The ADEA requires that actions normally be commenced within two years. 29 U.S.C. § 626(e)(1); 29 U.S.C. § 255(a). Therefore, the court in *Scheller* entered summary judgment against the claimant because even if the Maryland statute of limitations was satisfied by filing with the EEOC, the ADEA action was time barred. In other words, if the court dismissed the ADEA action, and the claimant subsequently filed with the MCHR, the claimant could not re-institute the ADEA action because the ADEA statute of limitations had elapsed. The result is very different in the case before this Court. Plaintiff filed this ADEA action approximately one year after the alleged age discrimination occurred. If this case were to be dismissed because plaintiff failed to file with the MCHR, plaintiff could then file with the MCHR and subsequently re-institute this ADEA action before the two-year ADEA statute of limitation elapses. The Court will not dismiss this action with prejudice merely because plaintiff failed to exhaust an administrative filing requirement that is open to interpretation.

The issue is now whether the Court should dismiss the ADEA claim without prejudice, or whether it should proceed to the merits. There are two reasons why the Court will exercise jurisdiction and reach a decision on the merits of defendant's motion for summary judgment. First, section 9(a) of the Maryland statute is susceptible to several interpretations—at least one of which would allow this Court to exercise jurisdiction. *See Scheller*, 728 F.Supp. at 380–81; *O'Shea v. Commercial Credit Corp.*, 734 F.Supp. 218, 219 (D.Md.1990). Second, judicial economy dictates that the case be dealt with at this juncture rather than subjecting both parties to needless and expensive delay. This case was filed over ten months ago, and both parties have participated in extensive discovery at considerable expense. Sixty-five exhibits comprising hundreds of pages have been submitted for the Court's consideration. No purpose would be served by dismissing this case and requiring another court to decide the same summary judgment motion at some future date. Furthermore, after full discovery, plaintiff had (but chose not to take advantage of) a full opportunity to argue against summary judgment on the merits.

### DEFENDANT'S SUMMARY JUDGMENT MOTION

The moving party has the initial responsibility of informing the court of the basis

for the belief that summary judgment is warranted. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987). Once a motion for summary judgment is made and supported, the nonmoving party "may not rest upon the mere allegations or denials of [that] party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court will grant summary judgment if there is "no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). A fact is material only if, when applied to the substantive law, the fact affects the outcome of the suit. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A material fact is genuine only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Id.* While the court may not weigh the evidence, it must determine whether there is a genuine issue for trial. As the Supreme Court stated in *Liberty Lobby*, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

## ADEA CLAIM

■ To recover under the ADEA, plaintiff must establish the following substantive elements:

1. that he is an employee covered by the ADEA;

2. that he has suffered an unfavorable employment action by an employer covered by the ADEA; and

3. that the action was taken under circumstances in which plaintiff's age was a determining factor in the action.

*See Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 238 (4th Cir.1982) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1112 (4th Cir.1981)). In this case, it is conceded that plaintiff is covered by the ADEA and that he was discharged by CSX. The only issue remaining is whether plain-

tiff was treated unfavorably because of his age; in other words, "but for" CSX's motive to discriminate against plaintiff because of his age, he would not have been discharged. *See Goldberg v. B. Green & Co.*, 836 F.2d 845, 847 (4th Cir.1988); *Lovelace*, 681 F.2d at 238–39.

There are two ways in which plaintiff may prove that age was a determining factor in his discharge. "[Plaintiff] may meet his burden under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue.... Alternatively, he may rely on the judicially created proof scheme for Title VII cases ... which has been adapted for application in ADEA litigation." *Goldberg*, 836 F.2d at 847–48 (quoting *EEOC v. Western Elec. Co.*, 713 F.2d 1011, 1014 (4th Cir.1983)) (citations omitted).

First, it is clear that under the "ordinary principles of proof" analysis, there is no genuine issue of material fact. Defendant has presented hundreds of pages of documents indicating that it had several legitimate reasons for demoting and discharging plaintiff. The evidence before this Court clearly demonstrates that plaintiff's performance, attendance, and attitude were all unsatisfactory. In contrast, plaintiff has failed to present any evidence indicating that his age was a determining factor in CSX's actions.

Plaintiff's performance, or rather his lack of performance, was enough by itself to merit his discharge. Beginning in 1986, when plaintiff was transferred to Baltimore, plaintiff's revenues steadily declined and became the lowest in the Unit. Defense Exhibit No. 29, ¶ 7. Despite repeated warnings, plaintiff's performance continued to deteriorate and he was progressively removed from any supervisory positions. Defense Exhibit No. 3, ¶¶ 4, 8, 9, 13, 16, 19, 21. In addition, plaintiff admits that he intentionally declined to attend Unit meetings and he refused to perform, or even attempt, the professional goals set forth by his supervisors. Defense Exhibit No. 2, pp. 213–16, 477–93. The Vice President for Marketing summarized the situation when he said that plaintiff was "the weakest guy

in [the] marketing group." Defense Exhibit No. 13, p. 39.

However, plaintiff's performance problems pale in comparison to his problems with simply reporting to work. By his own admission, plaintiff arrived at work late "most of the time...." Defense Exhibit No. 2, p. 113. The situation grew so bad that a number of employees in the Unit began playing a game called "Buck Squares." ("Buck" is the plaintiff's nickname.) Buck Squares was a lottery game in which employees would wager a quarter and draw a slip of paper that had a predicted arrival time for plaintiff. The employee who drew the slip of paper corresponding to plaintiff's arrival time won the money in the pot. As one co-worker stated, "We used to joke that the person who drew an early time slot (8:00 a.m. or 9:00 a.m.) would lose and the person who drew a 'no show' would win. I frequently played Buck Squares to release the frustration and resentment I felt towards Buck." Defense Exhibit No. 15, ¶ 5. *See also* Defense Exhibit No. 16, ¶ 4; No. 17, ¶ 7; No. 18, ¶ 7; No. 19, ¶ 4; No. 20, ¶ 4; No. 21, ¶ 3; No. 22, ¶ 3; No. 23, ¶ 4; No. 24, ¶ 3. When plaintiff was assigned to a new position in 1988, his tardiness and absenteeism became even worse. Defense Exhibit No. 2, pp. 73, 117. Even after he was placed on probation, plaintiff's attendance did not improve; he failed to report for work on 26 of the 40 workdays in the probationary period. Defense Exhibit No. 41, ¶ 6.

Furthermore, plaintiff admits he displayed a confrontational and uncooperative attitude towards his supervisors. But plaintiff did not limit his displays of dissatisfaction to senior management. In fact, plaintiff admits that he complained to virtually everyone about CSX. Defense Exhibit No. 2, pp. 192–93, 217–18. Eventually plaintiff's absenteeism, poor performance, and continuous complaints about CSX had a negative impact on the work environment. The following excerpts from affidavits of plaintiff's co-workers are indicative of the contempt plaintiff engendered.

I have absolutely no respect for Buck due to his rude behavior, poor perform-ance and poor attendance. I was ashamed that Buck worked for CSX.

Defense Exhibit No. 20, ¶¶ 3, 7.

Buck's attendance while he worked in the Section was dismal. Buck rarely came to work, and when he would show up, he would usually arrive late, leave early or both.

Defense Exhibit No. 15, ¶ 5.

Buck Riggle's attendance was so sporadic and the excuses he gave for his absences were so ridiculous that he turned into an office joke.... I concluded that Buck was totally incompetent in his job and lost all respect for him. As far as being a manager, Buck was a fake.

Defense Exhibit No. 18, ¶¶ 5, 10.

It was clear to me that Buck Riggle was not contributing to the department, and I looked upon him as the "Peter Principle" at work to the nth degree. I never worked with anyone at CSX who had the same type of poor work habits as Buck Riggle.

Defense Exhibit No. 16, ¶ 5.

Buck's attendance was so poor he appeared to be a part-time employee. I would characterize Buck Riggle as a non-workaholic.

Defense Exhibit No. 20, ¶ 3.

Plaintiff has not provided any evidence to refute defendant's voluminous presentation, and consequently the Court must conclude that under ordinary proof principles, there is no genuine issue of fact.

However, "[b]ecause it is difficult to prove discriminatory principles of proof, a 'judicially created proof scheme for Title VII cases' may be 'properly adapted' to the requirements of an ADEA case." *Goldberg*, 836 F.2d at 849 (quoting *Lovelace*, 681 F.2d at 239). This scheme creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff, and shifts the burden of producing evidence to the contrary on the employer. To invoke this scheme, plaintiff must establish a *"prima facie* case" consisting of the following requirements:

1. the plaintiff is in the protected age group;

2. the plaintiff was discharged or demoted;

3. at the time of discharge or demotion, the plaintiff was performing his job at a level that met his employer's legitimate expectations; and

4. following his discharge or demotion, the plaintiff was replaced by someone of comparable qualifications outside the protected class.

*Western Electric,* 713 F.2d at 1014 (citations omitted).

Based on the evidence provided by the parties and as discussed *ante,* plaintiff clearly cannot establish the third element. In addition, plaintiff's ability to establish the fourth element is suspect, to say the least. The undisputed evidence indicates that when plaintiff was demoted and ultimately discharged, his responsibilities were divided among three CSX employees; only one was under 40. Therefore, plaintiff cannot invoke the judicially created proof scheme. And even if he could establish a *prima facie* case, defendant has produced overwhelming evidence that unlawful discrimination was not a factor in its decision to discharge plaintiff.

Finally, a comparison of plaintiff's age with the ages of the other CSX managers is helpful in demonstrating that plaintiff's ADEA claim is baseless. The fact is that plaintiff was one of the youngest managers at CSX. The difficulties between plaintiff and CSX began escalating in 1986, when plaintiff was 38 years old and not even in the class protected by the ADEA. The first act of alleged age discrimination, plaintiff's reassignment to an arguably inferior position, occurred only two days after plaintiff had turned 40. When he was discharged, there were 88 managers in Distribution Services at the same management level as plaintiff. Sixty-three of these 88 managers were older than plaintiff. The average age of these managers was 45.5; in contrast, plaintiff had just turned 41. None of the 63 managers was demoted or discharged. All of these older managers received Management Incentive Compensation Plan awards, and twenty received promotions. Defense Exhibit No. 1, ¶¶ 5–7;

No. 6; No. 7. It is difficult to believe that defendant would discriminate against plaintiff based on his age, and not discriminate against the 71 percent of the managers who were older than plaintiff.

## RETALIATORY DISCHARGE

■ Plaintiff also alleges that he was discharged from CSX in retaliation for filing a charge of age discrimination with the EEOC in March 1989. To prevail on this claim, plaintiff must establish a *prima facie* case of retaliation consisting of the following elements:

1. that he engaged in protected activity;

2. that CSX took adverse employment action against him; and

3. that a causal connection existed between the protected activity and the adverse action.

*See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985).

"Once this prima facie case is established, it must be rebutted by legitimate nonretaliatory reasons for the adverse action. Again, after the employer meets the prima facie case, the burden of proof lies with the plaintiff to establish by a preponderance of the evidence that the proffered reasons are pretextual." *Williams,* 871 F.2d at 457 (citations omitted).

The evidence indicates that plaintiff probably cannot establish the requisite causal connection. First, the administrative process that led up to plaintiff's discharge began in 1987, long before he filed his first EEOC charge. Plaintiff was warned, suspended, demoted, and placed on probation prior to the EEOC charge. Second, neither plaintiff's immediate supervisor nor the Assistant Vice President in charge of the Unit knew that plaintiff had filed an EEOC charge when they met to terminate his employment.

Because, however, it is clear that others who participated in the decision knew of plaintiff's EEOC charge, the Court will assume *arguendo* that plaintiff has established his *prima facie* case. Nevertheless, as discussed *ante,* CSX has demonstrated a number of legitimate reasons for dis-

charging plaintiff. Plaintiff has offered no evidence that the proffered reasons are pretextual. "[M]ere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee." *Id.*

## CONCLUSION

In a tortured application of Henry Wadsworth Longfellow's adage that "Age is an opportunity no less than youth itself," plaintiff filed this ADEA claim. He would have this Court believe that he was discharged as a result of age discrimination, when the undisputed evidence clearly shows that he was a poor performer who was younger than the majority of his peers. There is no reason to prolong this litigation by taking any action short of granting summary judgment for defendant.

For the reasons stated, an order will be entered separately, granting defendant CSX's motion for summary judgment as to all counts asserted against it by plaintiff.

## JUDGMENT ORDER

For the reasons stated in the foregoing Memorandum, IT IS, this 30th day of January, 1991, by the Court, ORDERED:

1. That defendant's motion for summary judgment BE, and it hereby IS, GRANTED;

2. That judgment BE, and the same hereby IS, ENTERED in favor of defendant CSX on all claims asserted by plaintiff, with costs awarded to the defendant.