David A. McGOVERN, Jr., Plaintiff,

v.

TRANSAMERICA INSURANCE
FINANCE CORPORATION,
Defendant.

Civ. No. H–92–1402.

United States District Court,
D. Maryland.

June 9, 1993.

Kevin Francis Arthur, and Kramon and Graham, Baltimore, MD, for plaintiff.

Stephen David Frenkil, and Miles and Stockbridge, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Presently pending in this civil action is a motion for summary judgment filed by defendant Transamerica Insurance Finance Corporation ("TIFCO"). Plaintiff, David A. McGovern, Jr. ("McGovern"), a former TIFCO employee, claims that he was discharged on May 7, 1991, because he was 59 years of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* In support of his ADEA claim, plaintiff alleges that, although he was told his job position was eliminated, he was replaced at first by his immediate supervisor, who was then 40 years of age, and six months later by another individual, who was then 42 years of age.

Memoranda, depositions and exhibits in support of and in opposition to the pending motion have been submitted by the parties and reviewed by the Court. Oral argument has been heard in open Court. For the reasons to be stated, defendant's motion for summary judgment will be granted.

### I

#### Facts

TIFCO is a Maryland based company which provides financing for commercial property and casualty insurance premiums. In August of 1986, McGovern was hired by TIFCO after having held a number of jobs in different fields of employment. Subsequently, in late 1988, McGovern became TIFCO's Director for New Business Development, a position which required that he play a major role in developing new business for TIFCO. McGovern retained that same title until he was discharged in May of 1991. At the time that McGovern attained that position, TIFCO was headed by Charles Schnee, who was then the President and Chief Executive Officer.

Evidence of record indicates that Schnee was not a good marketing individual and that his management efforts were more aligned with administration rather than with growth. In addition, TIFCO's financial results were unacceptable to its parent company, in that its bad debt write-offs were too high, employees were demoralized, and the company was "waffling" in the marketplace because of a lack of strategic direction. Accordingly, in November of 1990, Robert Reich ("Reich") was hired to replace Schnee. Reich was charged with the responsibility of remedying TIFCO's problems and redirecting TIFCO's focus.

When plaintiff McGovern became Director for New Business Development in late 1988, his immediate supervisor was J. Kevin Olsen, one of TIFCO's Vice Presidents. At that time, one of McGovern's duties was to pursue new business from national insurance associations, risk retention groups ("RRGs"), and so-called "captives." Other responsibilities which McGovern had at the time included training the sales force and calling on major brokerage houses throughout the United States. McGovern has testified that under Olsen the major part of his job was the development of RRGs and associations.

McGovern assumed additional duties as Director for New Business Development in May of 1990 when Nelson Walker became his supervisor. Walker believed strongly in attending national, regional and local conventions as a means of obtaining new business for TIFCO. Thus, as a consequence of Walker's arrival, McGovern assumed the additional time-consuming task of coordinating TIFCO's involvement in more than 100 conventions per year.

Shortly after Reich arrived at TIFCO in November of 1990, he asked Walker to explain McGovern's duties and responsibilities. Walker responded with a memorandum entitled "David A. McGovern—Duties," which

described in some detail McGovern's major duties. These duties, together with Walker's estimate of the percentage which each duty formed of McGovern's job position, were as follows: (1) coordinating convention schedule, (thirty percent); (2) participating in national conventions, (five percent); (3) seeking out and promoting TIFCO to RRGs, captives and purchasing groups, (twenty percent); (4) pursuing association and national programs through the larger industry associations, (forty percent); and (5) communicating marketing and pertinent information to the field, (five percent). Plaintiff had no other significant duties.

When Reich arrived at TIFCO in November of 1990, he worked with officers of the Company and others to develop a new three-point business strategy which would: (1) develop preemptive relationships with senior management at the top twenty insurance brokers in the United States and Canadian marketplaces; (2) segment the distribution of TIFCO's product to the marketplace; and (3) achieve technological leadership within the premium financing industry through automation and computerization. In conjunction with his implementation of this new business strategy, Reich concluded that McGovern's duties relating to conventions, RRGs, captives, purchasing groups, and industry associations did not have significant value for the company. Thus, Reich decided that McGovern's duties should be eliminated, curtailed, or consolidated with other positions.

Reich met with Walker in Reich's office in early May of 1991, and Reich told Walker that McGovern's job was being eliminated. When he made this decision, Reich knew that some of McGovern's duties would still have to be performed for a short period of time because of commitments that had previously been made.

Walker objected to the decision in part because he felt overworked and stated that he did not know who was going to be able to handle McGovern's former duties. Although Reich did not instruct Walker to take over McGovern's duties, he expected them to be done. He accordingly suggested to Walker that a clerk could handle coordination of the convention schedules and that TIFCO employees who worked in the various communities could attend any necessary conventions.

At this meeting in early May of 1991, Walker raised a concern about the proposed action because of McGovern's age. McGovern was 59 years old at the time. Reich responded that age was not a relevant consideration in the termination of McGovern's job and stated that he would contact the company's human resources department to look into the age factor. During his deposition, Walker testified that it was his belief that Reich did not consider McGovern's age in making the decision to terminate his job. Reich never indicated to Walker in any way that he was eliminating McGovern's position to avoid any problem arising because of McGovern's age, and Walker has testified that there was no such scheme or pretext.

On May 7, 1991, Reich and Walker summoned McGovern to a meeting in Reich's office. At that meeting, Reich informed McGovern that his position was being eliminated as part of a corporate restructuring. In response, McGovern told Reich that he had only two weeks to go before his retirement date. Reich agreed to continue McGovern's employment until that date, and TIFCO in fact paid McGovern through June 1, 1991.

After McGovern's employment was terminated, Walker assumed some of McGovern's duties, while other duties of McGovern were either curtailed, eliminated or handled by others. Although he had been told by Reich to assign to a clerk any remaining responsibilities relating to the coordination of convention schedules, Walker elected to perform these duties himself. Convention activities were curtailed by about 25% in 1991, and were virtually eliminated in 1992. After McGovern's discharge, neither Walker nor any other TIFCO employee was assigned the responsibility for seeking out, investigating or promoting TIFCO to RRGs, captives or purchasing groups. The remaining job duties of McGovern which were taken over by Walker involved soliciting associations and national programs through the larger industry associations.

Three months after McGovern's departure, Reich hired Hugh Rainey for the position of

Vice–President of Marketing, which was the title of the position which Walker had held. Walker perceived Rainey's arrival as a demotion, because Rainey had received Walker's job title. Walker was given the title of Vice–President of Business Development. In response to his demotion, Walker offered to resign and demanded a severance package. A dispute developed between Walker and Reich, and Walker's employment was terminated on September 20, 1991.

Shortly before Walker was fired, Reich decided that TIFCO should enter the international market. Concurrently with Walker's departure, Rainey telephoned a former colleague, Christopher Copestake, with whom Rainey had worked at General Electric, and suggested that Copestake come to work for TIFCO. Copestake was then 42. Copestake was interested and met with Reich and others in early October of 1991. Because of Copestake's background in the international market, Reich decided that Copestake was the appropriate person for the position, and he was offered the job. Copestake accepted the offer and began work on November 25, 1991, as "Director, New Business Development."

Although Copestake was given the same title which McGovern had held previously, the record clearly establishes that Copestake's duties and responsibilities differed significantly. Indeed, 95% of McGovern's former duties were not assumed at all by Copestake. The only overlap in job responsibilities was sales force training, which constituted merely some 5% of McGovern's duties. Copestake's responsibilities did not include seeking out and promoting TIFCO to RRGs, captives and purchasing groups or pursuing association and national programs through the larger industry associations, duties which had occupied the bulk of the time spent by McGovern while he was employed by TIFCO as Director for New Business Development.

## II

### Summary Judgment Principles

■ One of the purposes of Rule 56, F.R.Civ.P., is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e). Moreover, " '[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick v. Celotex Corp.*, 736 F,2d 946, 958–59 (4th Cir.1984), (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). In the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. As Judge Winter said in *Bland v. Norfolk and Southern Railroad Company*, 406 F.2d 863, 866 (4th Cir.1969):

> While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, *i.e.*, any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

In two cases decided in 1986, the Supreme Court clarified and expanded the principles applicable to a trial court's consideration of a motion for summary judgment filed under Rule 56. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Anderson*, the Supreme Court held that the standard for granting a motion for summary judgment under Rule 56 is the same as that for granting a directed verdict under Rule 50, F.R.Civ.P., 477 U.S. at 250–51, 106 S.Ct. at 2511. The Court explained this standard as follows:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;* there must be evidence on

which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512 (emphasis added).

In *Catrett,* the Court held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar material *negating* the opponent's claim." 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). In reaching this result, the Court observed:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rule as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.P. 1; ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555.

■ In *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126 (4th Cir.1987), the Fourth Circuit discussed the Supreme Court's holdings in *Anderson* and *Catrett.* Judge Wilkinson emphasized in *Felty* that trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* at 1128 (quoting *Celotex, supra,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53). In considering a motion for summary judgment in a discrimination case like this one, a trial court must take special care, because motive is often the crucial issue. *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). Nevertheless, disposition of an ADEA suit under Rule 56 is appropriate if the plaintiff cannot prevail as a matter of law. *Conkwright v. Westinghouse Elec. Corp.,* 739 F.Supp. 1006, 1013 (D.Md.1990), *aff'd,* 933 F.2d 231 (4th Cir. 1991). Indeed, "one purpose of the allocation of burdens of proof and production in Title VII and ADEA actions is to help district courts to identify meritless suits and stop them short of full trial." *Id.* (citations omitted).

When these principles are applied to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted.

## III

### *Discussion*

■ To prevail on his age discrimination claim, plaintiff McGovern must prove that, "but for" TIFCO's discriminatory motive to discriminate against him, he would not have been discharged. *EEOC v. Western Elec. Co.,* 713 F.2d 1011, 1014 (4th Cir.1983). Plaintiff may meet this burden "under ordinary methods of proof by any direct or indirect evidence" of age discrimination. *Id.* Alternatively, plaintiff may rely on the judicially created proof scheme established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Goldberg v. B. Green & Co.,* 836 F.2d 845, 847 (4th Cir.1988).

First, it is clear from the record here that there is no genuine issue of material fact in this case under an "ordinary methods of proof" analysis. Plaintiff has not produced either direct or indirect evidence of age discrimination. On the contrary, the evidence establishes as a matter of law that no discriminatory motive on the part of TIFCO resulted in plaintiff's discharge.

■ Thus, if plaintiff is to prevail in this case, he must employ the *McDonnell Douglas* rationale, and initially establish a *prima facie* case of age discrimination by coming forward with evidence:

(1) that he is in the protected age group;

(2) that he was discharged;

(3) that at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations; and

(4) that following his discharge, he was replaced by someone of comparable

qualifications outside the protected age group.

*Tuck v. Henkel Corp.,* 973 F.2d 371, 375 (4th Cir.1992). If plaintiff establishes a *prima facie* case, the burden of production shifts to TIFCO, which is required to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment. *Id.* If TIFCO rebuts the inference of age discrimination, then the burden shifts back to plaintiff to prove at the trial by a preponderance of the evidence that the proffered explanation amounts to a mere pretext. *Id.*

■ Applying these principles to the facts of record here, this Court finds and concludes that plaintiff has failed to establish a *prima facie* case of age discrimination. He has met the first three requirements by producing evidence establishing that he was in the protected age group, that he was discharged and that at the time of his discharge he was performing his job at a level which met his employer's legitimate expectations. However, plaintiff has not come forward with material evidence indicating that, following his discharge, he was replaced by someone of comparable qualifications outside the protected group.

It is apparent here that the duties being performed by plaintiff were essentially eliminated. Since his job position no longer existed, neither Walker nor Copestake "replaced" McGovern after he was fired. Rather, the duties performed by both of them were quite different from the work which McGovern was doing for TIFCO at the time of his discharge. Evidence of record clearly establishes that McGovern's major job duties were eliminated, severely curtailed, or incorporated into other positions. To the extent that either Walker or Copestake performed a limited number of McGovern's former duties, these facts are insufficient to prove age discrimination. *See Riggle v. CSX Transp., Inc.,* 755 F.Supp. 676, 682 (D.Md.1991) (discharged employee could not establish fourth element of *prima facie* case because his job duties were merely distributed among three remaining employees); *Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.), *cert. denied,* ——

U.S. ——, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."); *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991) (distribution of former employee's work to remaining members of work force, some of whom were under 40, does not create an inference of age discrimination).

Even if it could be said that one of them "replaced" plaintiff, neither Walker nor Copestake was "outside the protected age group." *Tuck,* 973 F.2d at 375. Each of them was over 40.[1] The Fourth Circuit has recently held that if the alleged replacements are within the protected age group, a plaintiff is then required "to demonstrate that [the employer] did not treat age neutrally with respect to each employment decision." *EEOC v. Clay Printing Co.,* 955 F.2d 936, 943 (4th Cir.1992). In *Riggle,* Judge Smalkin of this Court determined that the plaintiff had been unable to establish the fourth element of the required *prima facie* case inasmuch as his duties had been divided among three remaining employees, only one of whom was under 40.

■ Similarly, on the record here, this Court has concluded as a matter of law that plaintiff was not, following his discharge, replaced by some one of comparable qualifications outside the protected age group. Plaintiff has not met his burden of demonstrating that TIFCO did not treat age neutrally with respect to this employment decision. Rather, the evidence here establishes that employment decisions at TIFCO, and particularly this one, were age neutral. Prior to the incident which gave rise to this suit, TIFCO had an impeccable history with regard to employment fairness. Conspicuously absent from the proof relied upon by plaintiff is any evidence of a "youth movement" or any evidence that TIFCO was seeking to eliminate elderly members of its work force. *See EEOC v. Clay Printing Co.,* 955 F.2d at 943; *Tuck,* 973 F.2d at 376; *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 243 (4th Cir.

---

**1.** The ADEA protects employees between the ages of forty and seventy. As noted, Walker was 40 and Copestake was 42 at the time that they allegedly "replaced" plaintiff.

1982). There is no evidence that supervisory personnel of TIFCO ever made discriminatory statements which would suggest the existence of age bias on the part of TIFCO's management. *Compare Tuck*, 973 F.2d at 376–77 (management statements that company needed "young blood" demonstrated age bias for summary judgment purposes). Indeed, plaintiff, who was 54 when he was hired by TIFCO, has testified that he was always treated fairly and kindly, that he never heard any comments or jokes concerning age, and that, other than his job termination, no action was ever taken by TIFCO in which age was a factor. Moreover, there is no evidence that TIFCO, as a cost-saving measure, fired plaintiff before he reached retirement age. *See Tuck*, 973 F.2d at 376. At plaintiff's request, TIFCO even extended his employment by two weeks after his termination date, because of his belief that he would then be entitled to receive early retirement benefits. For these reasons, the Court has concluded that plaintiff cannot establish a *prima facie* case of age discrimination.

Even assuming, *arguendo*, that the Court were to find that plaintiff had made out a *prima facie* case on the present record, summary judgment in favor of the defendant would still be granted. Defendant has in this case articulated a legitimate nondiscriminatory reason for the termination of plaintiff's employment, and plaintiff has not presented material evidence which would raise a triable issue as to pretext.

■ Defendant TIFCO has demonstrated that new management developed new business strategies and that the activities and responsibilities undertaken by plaintiff were no longer consistent with the new business strategies of the company. In order to show that TIFCO's proffered reason for the termination of plaintiff's job was pretextual, plaintiff must produce evidence indicating that, as between plaintiff's age and defendant's explanation, age was the more likely reason for the dismissal. *Tuck*, 973 F.2d at 375. Alternatively, plaintiff may point to evidence in the record showing that defendant's explana-

tion is "unworthy of credence." *Id.* When all the evidence of record here is examined in a light favorable to the plaintiff, this Court concludes that plaintiff has not come forward with minimal facts indicating that age was a factor in the termination of his employment or that defendant's explanation for the action cannot be believed. Evidence does not exist in this record indicating that "but for" TIFCO's discriminatory motive to discriminate against him, he would not have been discharged. *Western Elec. Co.*, 713 F.2d at 1014.

■ Plaintiff's principal argument in support of his claim of age discrimination is that, six months after plaintiff was discharged, Copestake, a younger man, replaced plaintiff by assuming a position with the same job title: "Director, New Business Development." Although Copestake assumed only 5% of plaintiff's former duties, plaintiff contends that Copestake replaced plaintiff because Copestake assumed the general responsibility of obtaining new business for the company. This argument ignores uncontradicted evidence of the principal duties undertaken by Copestake after he commenced his employment with TIFCO. The evidence establishes that Copestake was hired because of his experience with the international market, that Copestake solicited business on the international market as opposed to merely soliciting domestic business, and that Copestake solicited business from the top twenty alphabet house brokers as opposed to associations, RRGs and captives. By the time Copestake arrived, TIFCO had virtually eliminated convention activity.[2] Thus, it is apparent from the record here that plaintiff's duties were largely eliminated after he left and that Copestake was not thereafter performing the bulk of those duties.

Directly on point here is the recent Fourth Circuit case of *English v. Pabst Brewing Co.*, 828 F.2d 1047 (4th Cir.1987). In *English*, the Fourth Circuit affirmed the district court's grant of summary judgment in favor of an employer who had allegedly "replaced" a 65 year old sales person with a 25 year old sales person. As in this case, the record in *English* established that the younger employee "was not English's replacement, but filled a position requiring different skills and

---

**2.** The record indicates that TIFCO representatives attended only 10 conventions in 1992, as

compared to some 70 or more in 1991.

expertise created in the company's reorganization." *Id.* at 1048. The defendant company had reorganized and had eliminated the product line which had been plaintiff's area of expertise. *Id.* at 1051. The younger employee had an educational background and experience that was more suited to the company's new focus. *Id.* Moreover, the position filled by the younger employee involved a national sales territory as opposed to the limited southeastern field work that had been the plaintiff's forte. *Id.* Under these circumstances, the Fourth Circuit affirmed the district court's granting of summary judgment in favor of the employer.

In this case, as in *English*, plaintiff was not "replaced" by a younger employee. The fact that Copestake had the same job title as plaintiff is hardly proof of pretext. Copestake assumed a position that required different skills and expertise, and he was hired because of Reich's plan to employ a new business strategy. The reasons given by Reich for the termination of plaintiff's employment were not pretextual. Copestake's position targeted the international market and the top twenty alphabet house brokers that had been the goal of Reich's business plan. The six month time lag between the date when McGovern was discharged and the date when Copestake was hired further weakens any possible inference of age discrimination: *See Lilley*, 958 F.2d at 752 (nine month time lag); *Frieze*, 950 F.2d at 541 (five month time lag); *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 941 (6th Cir. 1987) (three month time lag). Moreover, evidence of record does not indicate that plaintiff was discharged for the purpose of having Walker, his supervisor, take over all of his duties.

In opposing defendant's motion, plaintiff relies heavily on inferences he derives from the fact that a job description was prepared by TIFCO for Copestake some weeks after he was hired.[3] The evidence in question is not material to the issue before the Court. Counsel for plaintiff addressed a letter to Reich dated December 3, 1991, threatening suit because of counsel's belief that McGovern's termination "was motivated by unlawful considerations." Upon receipt of this letter, Brian G. Appelt, Esq., TIFCO's general counsel, directed that a job description for Copestake be promptly prepared. Counsel's attempt to bolster defendant's case following this threat of suit has little relevance to the intent of Reich that existed more than six months earlier when Reich discharged plaintiff. Whether or not there was in December of 1991 a "mad scramble" to prepare a job description for Copestake which would, in counsel's opinion, assist TIFCO in defending plaintiff's claim of job discrimination, the key issue here is whether Reich acted with discriminatory intent more than six months earlier.

Under all the circumstances, plaintiff has failed to produce evidence to support his contention that Copestake replaced him or that TIFCO's reason for discharging him was pretextual. Since the record is devoid of circumstantial or other evidence which would indicate that plaintiff's age had anything to do with the termination of his employment, defendant's motion for summary judgment must be granted.

An appropriate Order will be entered by the Court today.

---

**3.** This document described Copestake's job as a "new position."